Good morning, Your Honors. May it please the Court, before I begin, if I may reserve two minutes for rebuttal. My name is Perry Shores. I represent Hanover Insurance Company. This is a case which essentially comes down to a simple insurance coverage question, and that is, do we determine an insurance company's duty to defend based on the complaint we have before us or based on the complaint that might arise from a future amendment based on some theoretical change in circumstances in the future? And that question is clearly answered in the former proposition that it's based on the complaint we have now. And so we have an exclusion, and this case comes down to the application and interpretation of a single exclusion, for, among other things, unfair or deceptive business practices, including but not limited to violations of any local, state, or federal consumer protection laws. So really the central issue, there's two that come from that exclusion. The central one is whether or not this complaint arises out of deceptive business practices, and then there's also the issue of whether it arises out of the underlying litigation. Yeah. The underlying litigation. When you talk about the complaint, you're talking about the underlying litigation. Yes. I apologize. Yes. So the underlying complaint is when I reference the complaint, that's what I mean. And so the telling factual point was really recognized by the district court of all entities here considering how they ruled, in our view, in error. But one sentence from the district court's opinion is critically relevant to the question of whether or not this case, the underlying lawsuit, arises out of deceptive business practices. And it's on page 9 of their opinion where the court says that the causes of action all arose, quote, from the nucleus of facts in which deception is alleged, unquote. And that's really the heart of the issue here. We've got a case where every single count of this underlying complaint is based on the allegation that the PMZ concealed the fact that the price of these NHD reports, natural hazard disclosure reports, included kickbacks or secret profits, that the consumers were misled by this representation, and that the concealed facts were material. That's in every single count in this complaint. Would you agree, just as a proposition, that a negligent omission to provide information is not a deceptive business practice? No, I would not agree with that at all. In fact, I think that's the mistake that the district court and PMZ makes in this case in conflating the concept of deception with the concept of intent to deceive. An act or representation can be deceptive even if it's not with intent to deceive. Well, I'm just looking at the definition of deception. It reads, this is in Black's Law Dictionary, the first book I ever received in law school. Deception is defined as, one, the act of deliberately causing someone to believe that something is true when the actor knows it to be false. Essentially, fundamental to the definition of deception is an intent to mislead somebody. So how is that consistent with negligence? That is, somebody who just did not fulfill their duty, their fiduciary duty, to disclose the sources of their connection to this particular report. Well, with all respect to Black's Law Dictionary, and I have no quarrel with Black's approach to defining what is deception. And in that case, with the Ninth Circuit, what they've said is that deception is based on the impression made on the consumer or the receiver of the false information, not based on the intent of the person making the representation. The question is, did it have the effect of tending to mislead the consumer in this case? Did it have the effect of causing confusion? So I would respectfully ---- So deceptive business practices all relate to the perception of the recipient of the information? Correct. That's the customer. Has nothing to do with the acts or the approach to the acts, the intent of the participant in the alleged fraud? Well, the acts are relevant to the extent that that determines what the impression is from the standpoint of the consumer. So we looked at one of the counts of the class action lawsuit, breach of fiduciary duty. That's all it says, essentially. So what you're suggesting is that that can be negligent, breach of fiduciary information about this scheme, as you call it, but you call that necessarily sufficiently deceptive to fall within deceptive business practices? Well, again, the breach of fiduciary duty count incorporates the allegations that this was not simply a mistaken attempt to ---- a mistaken statement about what was involved in the pricing of these NHD reports. The breach of fiduciary duty is based on the allegation that there was a widespread practice by the insurers here to conceal the fact that they were receiving secret profits. So this is not really a case, regardless of what the ---- But then you were just asked by Judge Schroeder about negligence. Do you think a negligent omission of the fiduciary responsibility of disclosing your income is sufficient to justify a verdict? And you said yes. Yes. So essentially it is nothing, according to your theory, has nothing to do with intentional deception. It has to do with how people would perceive of this particular lack of information and whether they're negligent or not. Just they could be simply negligent. There could be a verdict. Correct. And that's, you know, you've got while ---- while Hanover rejects the idea that this exclusion is limited to consumer protection laws, just look at the California consumer protection laws, which talk about deception in a strict liability context. So there is no need to show that there was intent to deceive in order for there to be found a deceptive business practice under those consumer statutes. And then more broadly, again, the Ninth Circuit and California state courts have applied California law in such a way to determine that a business practice is deceptive regardless of what the intent is, regardless of whether there's intent to deceive, as long as there was the dead impression on the part of the consumer that caused them to wrongfully ascertain what the true facts were and caused confusion. I think that your understanding of deceptive act or deceptive practice, that is consistent with the way Black's Law Dictionary defines that phrase. And because what it says is, as defined by the FTC and most State statutes, conduct that is likely to deceive a consumer acting reasonably under similar circumstances. I think that's your point, is that the point of reference is the effect on the consumer, not the intent of the declarant. Correct. And I don't have the Black's Law definition in front of me, but I don't know. There may be multiple subsections of that definition that go beyond that. But, yes, I would agree, absolutely. Okay. That's what it says. Deceptive act or deceptive practices means what I just said. Right. I guess my question, though, for you is maybe a little bit different. Let's forget about deception for a second. Sure. I think your opponent raises as an alternative ground for affirmance is the reliance on practices as involving some kind of a pattern of conduct and the possibility at least that the allegations in the plaintiff's complaint, although certainly phrased in terms of a pattern and ongoing practice, nonetheless gives rise to the prospect that maybe they will only be able to prove isolated incidents in which, I don't know, the disclosure wasn't made and that that, therefore, would fall short of a practice. And, therefore, there is still some possibility of this being covered. What's your response to that? It's twofold. Number one, every complaint obviously has the potential that at some point in the future, there may be, it may be reduced to some, for lack of a better phrase, a lesser included offense. You may start off with, let's take it out of this context, some case of intentional battery, let's say, that eventually becomes because the evidence showed otherwise causes the plaintiff to later amend the complaint to say, well, it was only a negligent battery or negligent striking of somebody. So, number one, the fact that it could, in the future, become something different is not relevant to the duty of defense. But we have to be at the end of that example. Don't we have California cases that say in precisely that circumstance where the only claim alleges one of intentional wrongdoing that's clearly covered by an exclusion, that nonetheless, because the possibility remains that the plaintiff could amend to allege negligent conduct, that there still is a duty to defend? Don't the California cases sweep that broadly? Well, they may. I acknowledge that. I don't have those cases in front of me. So that's why you started with that and thought, well, why isn't that what's going on here? Well, let me get to the second point, and that is, here, what you have alleged, actually, in this complaint is that not only that this was a widespread practice, but that the widespread nature of this practice was essential to the entire scheme that's alleged. Because you're talking about $40 per NHD report, the allegations in the complaint are that in order to make that a profitable enterprise for the insureds, this had to be done on a widespread basis. And it's a class action. And it's a class action. But there's no money involved if they just prove a couple of isolated cases. A couple of isolated, yeah. I mean, what plaintiff would bring a case to recover $40, and there may even be jurisdictional limit questions in a court when you're talking about a claim that small? So I don't agree with the idea that this eventually could be reduced to simply some isolated acts of deception, because the heart of this complaint is quite to the contrary. So I think that addresses the deceptive business practices. What's interesting is that neither the district court nor PMT, even on this appeal, has really addressed the other argument, which is that these were unfair business practices. And we've cited the case law that defines unfair business practices as having the I'm sorry. The ---- Just before you go to unfair, could I ask you a question? Absolutely. This is a really confusing combination of exclusions, 1 and 11. In fact, the district court judge, Judge Alsop, made some comment about how difficult it is to understand the two. How do you jive the two different exclusions, one dealing with fraudulent conduct, the other dealing with a pattern of conduct? One clearly suggests that the insurance company would have the duty to defend, because you can't even raise the question until after there's a verdict. Why doesn't that necessarily, just looking at this whole contract in general, create a level of confusion about what it really means, which warrants a suggestion that the contract has to be viewed in light most favorable to the insured? Well, it's ---- I would take issue, number one, with the contention that Exclusion 1, the intentional act, fraudulent act, dishonest act, exclusion, creates a duty to defend. All it says is that we won't apply that exclusion until there's an actual final adjudication. There's nothing that creates an affirmative duty to defend there. Number two, it's the, that Exclusion 1 uses the term, the word act, whereas Exclusion 11 uses the word practices. So they are not completely overlapping exclusions that have opposite effects. There's one that deals with the narrow subset of fraudulent or dishonest acts in Then there's deceptive business practices, which are broader than, which have to be practices, not isolated acts, and don't involve the question of whether it was intentional or not. And because they're broader practices, they're entitled to be treated differently? Is that, is that your point? Well, they're just two different exclusions that address two different risks. And the fact that one has an exception on that particular risk has no effect on what happens with the other excluded risk in a separate exclusion. So Exclusion 1 refers to intentional acts and says, we'll only apply that with a final adjudication. Exclusion 11 has a totally different risk, not affected by that exception, and is applied in its own right. And has, and the two are different risks that have no, really nothing to do with each other because they don't apply in the same scenario. If they applied to the exact same exclusive risk, then maybe there would be some sort of argument that one, why would, why does one have an exception, but one doesn't. I mean, you've got two different exclusions with two different risks. The exception in one of them really has no impact on the other. Okay. You've used up all your time, but I'll give you your two minutes for rebuttal. Let's hear from your opponent. Good morning. May it please the Court, Baron Weinstein for the defendants and appellees. I was going to start by discussing the duty to defend, but obviously the panel is more than versed, as I think shown from the prior discussion. But I would like to point out that, although, in addition to the generally very broad duty to defend in California, I think it's important to focus on the fact that we are dealing here with an exclusion. So not only does Hanover have the burden of proof, we've shown, and Hanover agrees that we've shown, that the allegations in the underlying complaint fall within the basic insuring provision in the policy. Therefore, we've met our burden. That's our burden. It shifts, then, the burden shifts to Hanover to prove conclusively that an exclusion applies, in the words of the Atlantic Mutual case, in all possible worlds. A very broad and heavy burden for Hanover to make. Let me ask you, does your — let's focus on the deception part first. You have other arguments, I know, but that's the only one the district court ruled on, right? Yes. So do you agree that, in order for you to prevail on that argument, that we do need to read the word deceptive — I don't have it in front of me now — deceptive business practice as requiring some kind of an intent to deceive on the part of the declarant? In other words, if your opponent's view of what deceptive acts or practices might mean is correct, do you concede that you lose, or is there still some way that you would prevail under that broader definition of deception? Well, I think we'd prevail without getting to that question, but I will answer it, of course. How so? And the answer is — No, no, no. What do you want us to do before getting to that? Oh, I don't — I mean, I think that's a fair question that I want to answer, but the reason I said I think we don't need to answer it is because of the act-versus-practice discussion. Okay. Let's put that aside for a second. Yeah. We'll get to that. But — but in terms of deception, look, I think that the Exclusion 11 looks and tastes and acts like a — an unfair business practice-type exclusion that applies to the unfair competition laws, that applies to false advertising, restraint of trade, anti-competitive I'm sorry. You said exclusion. You're talking about 11 now? Yes, I am. Exclusion 11. I'm sorry, Judge Schroeder. The — the anti-competitive, anti-trust-type exclusions, the deceptive business practices, it's interesting. One of the cases cited by Hanover is the — is the Byers case, California case, that it relies on for its interpretation of similar language. And that case and others use the term unfair — deceptive business practice, a deceptive business practice law, as a short-form description of the unfair competition law of 17200 in California. So really, all of the types of conduct captured in Exclusion 11 are anti-competitive, unfair business practices laws. And even the consumer protection reference is — it's — it — the — the exclusion first describes anti-unfair trade practices and anti-competitive, and then it says including, but not limited to, consumer protection. But let's assume we don't buy that reading of it. I — focus on my question, if you could. Do — do you agree that we have to read deceptive business practices as — as including — as requiring, rather, an intent to deceive in order for you to prevail here? Because that's what the district court said, right? That's the sole basis on — of the ruling that's before us now, is that, well, when it referred to deceptive business practices, that means you have to have an intent to deceive, and they've alleged at least two causes of action that don't require that, therefore, it doesn't apply. So I'm trying to get an answer from you, just yes or no. Do — do we need to agree with the district court that deceptive business — business practices includes an intent to deceive, that it requires that? Well, I think so. But I think it's broken down into intent and deception. You have to look at both of them. But I think that there has to be, for a practice, it has to be — it has to include a willfulness in the conduct. But I just — so I read the definition. I read the definition from Black's Law Dictionary of what a deceptive act or a deceptive practice is, and it doesn't say anything about intent. And that's consistent with the way most California consumer protection statutes — I'm sorry, most State consumer protection statutes, including California's, are read, that it's focused on what's the effect going to be on a reasonable consumer, right? And that, it seems to me, all of the claims that are alleged in the underlying lawsuit most definitely fit that definition of deceptive, right? If you take out the intent to deceive part. Well, no. I don't — I don't agree with that. Not the — not the breach of fiduciary duty claims. Okay. Why not? Because the breach of fiduciary duty claims arise from the relationship between a real estate agent and the consumer — and the customer, whoever that customer may be. The law has imposed on fiduciaries an obligation of full disclosure, even if the transaction is perfectly fair. Right. So even if — Yeah. Yeah, yeah. So — so the — what they're alleging, what the plaintiffs in the underlying action are alleging is that you did not tell us the fact that was necessary for there not to be a breach of fiduciary duty. So why isn't that fall within deception? I've been deceived because you hid, as my fiduciary, you hid from me a key fact that was necessary for me to — to know about. Because — because — because the fiduciary relationship and the rules imposed do not necessarily mean that the absence of those rules leads to deception. If I buy a tie at Macy's and they don't tell me that they bought it from a wholesaler who bought it from another wholesaler and they all made money off of it, we wouldn't think that that was deceptive, even though I don't know — If they had a duty — if they had a duty to disclose that to you, yes, we would. It would mean they breached their duty, but I wouldn't be any more or less deceptive just because of that — more or less deceived just because of that duty. Why — why not? I don't understand why not. Because I have no expectation that they're going to tell me. If I don't know about the duty — If they have to be able to duty to you. Like in this — in this underlying case, right? That's right. I'm trusting that if you have some side deal where you're getting a cut of this money that I'm having to pay, you're going to tell me that. And if you don't tell me that and I engage in the transaction anyway, how have I not been deceived? Because — because you, under those facts, would be deceived. I don't disagree with that. Because you are trusting me to tell you that kind of information. That doesn't mean that all consumers are trusting the sellers. In fact, the law says we — I'm lost, because that's — isn't that the very basis of the breach of fiduciary duty claim here? The — So I could trust that you would tell me this key fact that I would need to know before I engage in this other transaction. That's what they're alleging. That's what the — that's the — the nature of the duty. But the cases recognize that actual deception is not required and actual intent is not required in order for there to be a breach of fiduciary duty. I might be missing, Judge Rutter, your — your question, but I hope not. I'm not trying to skirt it. I think I'm just looking at it, perhaps, in a slightly different way. I'm sorry. Well, I'm a little — I — I guess I'm a little confused, because when we talk about in all possible worlds, aren't we talking about in all possible worlds of the complaint? Yes. So I'm having trouble understanding how you're going to recover on a class-action basis if you aren't able to show that there was some kind of scheme or common thread of keeping this information from — Well, I would agree that if — if the underlying plaintiffs were to, A, get a class certified and, B, recover on the — on the part of that class, then they would have to have shown some commonality and — and common — common conduct on the part of the entire class. But that hasn't happened. That would not necessarily involve some intent to deceive or — No. That's what this is all about. No, that's right. That's right. It would be a simple breach. It would be a — a negligent — could be a negligent failure to disclose the information that is part of a broader practice over and over and over again. But the all-possible-worlds part of the analysis is that there are four plaintiffs who each have sued on the basis of their single transaction with the insureds and saying, we bought a house, we got the hazard report, we didn't know that it was through a third party in which the insureds allegedly had an interest, and therefore, we have a claim for breach of fiduciary duty. And what Hanover is trying to do is exactly what California law says one cannot do, and that is they are trying to describe the lawsuit as, hey, look, nobody would sue for $48. It just wouldn't happen. So the lawsuit really is about a pattern and a practice. The problem with that is all you need is a smidgen of the possibility, a bare possibility of a covered claim in order to trigger the duty to defend. And the fact that we have four plaintiffs who are suing individually, as well as class grabs, what if the class is never certified? They still could recover their $48, and that is enough to trigger the duty to defend. And that is why Exclusion 11 doesn't necessarily apply, because Hanover has conceded that if only a single plaintiff or isolated acts are involved in the lawsuit, that triggers, if any exclusion, it triggers Exclusion 1, not 11. And we have four of those claims in the lawsuit So no longer deceptive business practices become the relevant argument or the most significant argument. What you're suggesting is no pattern, because there's, in fact, four individual claims. And I'd like to just build up on that particular issue. In fact, there are a number of defendants here, individual real estate practitioners, who also are entitled to representation, I would assume. Would you agree with that? Yes. Does the fact that there are individual real estate agents who are engaged in this particular class-action lawsuit, who are the defendants in the class-action lawsuit, suggest to you that pattern would become less significant, but the individual claims against these individual real estate agents arise a separate duty to defend? Well, in fact, I think we pointed out in our brief that under the separation of insureds provisions in the policy, which says we treat each insured as if there were no other insureds and they are individually insured, except for the policy limits are not multiplied. And the fact that there are individual employees or agents of defendant, and they are sued individually, and they are all being defended. And so, yes, each of them has a claim for a duty to defend. But then Hanover suggested that you never raised this before the district court. Never raised this particular issue. Right. And I think that's correct. That is correct. It's the hook that I would hang my hat on, but the policy was certainly in the record in the district court. The policy has the separation of insured clause. The complaint includes these individual defendants. So the record certainly supports that analysis, but we did not address that issue with Judge Alsup. That's correct. And I would just note the obvious that the court has the right to consider additional arguments and matters if it's in the record to support the district court's findings. Can you take another run at the deceptive thing? Because I just could not. We were not connecting, and I'm afraid I'm missing something. So are you just saying that a hypothetical breach of fiduciary duty claim doesn't require deception? Because if that's all you're saying, I would agree with you there. And I guess what I'm saying, on the facts alleged in this complaint, there is no ‑‑ I can't see any circumstances where the plaintiffs would prevail on the breach of fiduciary duty claim that wouldn't result in a finding of deception in the broad way that I think most State statutes define it. Okay. Let me try. The ‑‑ if I'm a ‑‑ if I'm a ‑‑ buying a house, and I'm a ‑‑ an unsophisticated person, which would be true, I would go to my agent, and my agent would take care of things, and they would probably recommend a title company, and they would probably send me to over here to get ‑‑ you know, they probably recommend some experts to come and do the inspections and that sort of thing. And I'm relying on that agent. I've never heard the word fiduciary before. And my agent, part of the package of services includes telling me I've got to get a hazard report, and it's going to cost about 80 bucks. And I say fine, and they get the hazard report, and then I pay my 80 bucks. What I don't know is that 40 of that allegedly ‑‑ now, this is all ‑‑ none of this is proven yet. Absolutely. That 40 of that allegedly goes to the agent. Right. I don't feel deceived, because I didn't know that they were even required to tell me that. And it's not anything ‑‑ now, if I found out that it would have cost me $40 to go elsewhere, and instead it cost $80. That's what they're alleging. No, they're not. That's what ‑‑ that's what Hanover says they're alleging. But the complaint actually says that Valley, I can't remember, VHT, who prepared the report and sold it at a discount to Disclosure Source, or it might have been the other way around, that the retail price was the same for both. It's only in Hanover's briefing that Hanover says, well, wait a minute, it was an inflated price, giving the impression that the consumers were paying more than they would in the open market. And that's not correct. That is not what is alleged in the complaint. That is not in the record here, and it would do no good for me to say that's not what happened if it's not in the record. But so that's why I wouldn't feel deceived. I didn't ‑‑ I didn't suffer any harm. It's just that because of the relationship between an agent and principal in a fiduciary relationship, the agent is required to disclose all income received to the principal, just required to because of the fiduciary relationship, not because it's unfair, not because it would cheat. Okay, yes, I think that's helpful, but you're assuming that the only thing that's relevant to me as the consumer is price. And so what, maybe the retail price was $40 and that's all I paid, but I would want to know if you were recommending this person, let's say where the quality of the services is also a highly relevant fact in terms of who I would select, I would want to know if you have some relationship with them such that they're giving you a cut, because that someone over here who I could pay the same amount to, but get a much higher. Well, that's the allegation in the underlying case. Okay, so that's what I'm saying. I would feel deceived if you didn't tell me that you're recommending the C-list team over here for $40 when I could have got the A-list team for $40, and you never told me that. I relied on you to give me the straight scoop, and you didn't. So I guess I hear what you're saying, but I'm still left feeling like, no, there would be deception, even if the price paid were the same. And I would just point out that there were no affirmative statements. This is all about a failure to disclose alleged failure. It's just a price. Is that what we're talking about? It's the failure to disclose that a piece of the price — that there's a wholesale retail relationship, that a piece of that price is coming to me. The price is the same. The product is the same. It's just that as your maybe. Maybe. That's what I'm saying. Maybe. It doesn't matter. I've still — you still have a claim against me for breach of fiduciary duty if the — even if the product's the same, the price is the same, the quality is the same, all of that's the same. It's just that the law imposes a duty on me to disclose to you that I got $40 out of this, and I didn't do that. You have to disclose your own interest in it. Correct. Okay. You're well over your time. Your argument is very helpful. Thank you. Let's give your opponent two minutes for rebuttal. Thank you, Your Honors. I just want to really address one point, and that was the issue of what happens if the class is not certified. And yes, there is the possibility that the class might not be certified, and there could be a number of reasons that it doesn't get certified. And let's say that all we have, then, are the four plaintiffs. That doesn't change what the allegations are in the complaint. The fact that a class is certified or not certified, the only effect that would have is just on the class allegations. The individual allegations are still based on the — the individual claims are still based on the allegations that there was a widespread practice of deceiving consumers about the fact that there were secret profits connected with these NHD reports. So whether or not this is a class action or not is really not the issue as far as — But their point is that, yes, that's the allegation, but it's still possible that the plaintiffs will fall short of that, and all they will be able to prove are these isolated instances that don't rise to the level of practices. And that's, it seems to me, the same thing as all the plaintiff has alleged for now is this intentional wrongdoing, which would be covered by an exclusion, but it remains possible that all they'll be able to prove is negligence, and that would be covered. Well, in that case, and let me kind of clarify, in that case, you're talking about then how do you characterize the same act. In this case, do you characterize that as intentional or negligent? In this case, if it's a question of whether or not there are four plaintiffs and — or a whole class of plaintiffs, the question is not whether or not here it's a question of whether or not there was a totally different act that occurred in which there were isolated instances of deception as opposed to this widespread pattern. So we're not just talking about the intent of the defendants here. We're talking, the insurers, we're talking about a completely different set of facts then that would apply, and in that case, you have to go with the complaint that's in front of us, not the complaint that could come out later if they decide, you know what, the facts actually show something different. We're not going to rely anymore on allegations that this was a widespread practice. We're going to amend our complaint to allege a now different set of facts that there were isolated instances where there were misrepresentations made. So because there was deception here and there — deception in the context of a business practice, I think the exclusion applies, and I would ask the Court to reverse the district court ruling. Thank you. Thank you very much for your helpful arguments. The case just argued will be submitted. Interesting case. We will move to the last case on the calendar, which is Sloan v. Commissioner of Internal Revenue.
judges: Schroeder, Watford, Sessions